**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | <u>**COMPLAINT**</u> |
| | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **HUNTINGTON INGALLS, INCORPORATED,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

<u>NATURE OF THE ACTION</u>

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Stanley Dowdle ("Dowdle") who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission (the "Commission") alleges that Huntington Ingalls Incorporated ("Defendant") failed to provide a reasonable accommodation for Dowdle's disability, and refused to hire him because of his disability, in violation of the ADA.

<u>JURISDICTION AND VENUE</u>

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

PARTIES

3.      Plaintiff is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant, a Virginia corporation, has continuously been doing business in the state of Virginia and the city of Newport News, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Dowdle filed a charge with the Commission alleging violations of the ADA by Huntington Ingalls Industries, Inc., the sole owner of Defendant Huntington Ingalls, Incorporated.  Defendant Huntington Ingalls, Incorporated responded to Dowdle's charge and participated in all aspects of the administrative investigation.

8.      On December 28, 2016, the Commission issued a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting the parties to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.      Defendant Huntington Ingalls, Incorporated participated in the Commission's conciliation efforts.

10.     On May 19, 2017, the Commission issued a Notice of Failure of Conciliation to Huntington Ingalls Industries, Inc., the sole owner of Defendant Huntington Ingalls, Incorporated, advising that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12.     As more fully described below, in or around August 2013, Defendant engaged in unlawful employment practices at its shipyard in Newport News, Virginia, in violation of Section 102 of Title I of the ADA, 42 U.S.C 42 U.S.C. § 12112, when it refused to provide Stanley Dowdle with a reasonable accommodation for his disability (hearing loss), and failed to hire Dowdle because of his disability.

13.     Dowdle has a physical impairment, hearing loss, which substantially limits his major life activity of hearing.  In or around 2012, Dowdle began wearing a hearing aid in both ears.  Dowdle wears hearing aids on a daily basis to assist him in hearing.

### Employment relationship between Defendant and Dowdle

14.     At all relevant times, Defendant met the operational needs of its Newport News shipyard in part by using personnel provided by at least one contractor ("Contractor") and one sub-contractor ("Sub-Contractor").

15.     At all relevant times, Defendant and Contractor operated under a contract dated May 15, 2012 ("Prime Agreement"), and Contractor and Sub-Contractor operated under a contract dated September 26, 2012 ("Subcontract Agreement").

16.     The Prime Agreement and Subcontract Agreement respectively extended authority to the Contractor and Sub-Contractor to recruit and refer candidates to Defendant solely for the purpose of working at Defendant's Newport News shipyard.

17.     Defendant maintained ultimate authority to hire or deny hire to candidates referred by the Contractor and Sub-Contractor to work at Defendant's Newport News shipyard.

18.     During the relevant time, Sub-Contractor provided some or all of the personnel placed in the "pipefitter" position at Defendant's Newport News shipyard.

19.     Pipefitters recruited and referred by Sub-Contractor to Defendant under either the Prime Agreement or the Subcontract Agreement were directly supervised by employees of Defendant.

20.     One or more of Defendant's employees instructed the day to day activities of pipefitters who were hired after referral to Defendant by the Sub-Contractor.

21.     One or more of Defendant's employees served as on-site supervisors of pipefitters who were hired after referral to Defendant by the Sub-Contractor.

22.     Defendant had the ultimate decision-making authority concerning Dowdle's employment with Defendant in a pipefitter position.

23.     At all relevant times, Defendant was an employer within the meaning of the ADA.

24.     At all relevant times, Defendant would have been Dowdle's direct and sole employer if Dowdle had been hired for a pipefitter position with Defendant.

25.     At all relevant times, Defendant exerted both direct and indirect control over the terms and conditions of employment of pipefitters who were referred to Defendant by the Sub-Contractor and were allowed to work by Defendant at its Newport News shipyard.   Thus, in the alternative, Defendant would have been a joint employer with the Sub-Contractor of Dowdle if Dowdle had been hired to work as a pipefitter for Defendant.

<u>Failure to Hire</u>

26.     On or about July 9, 2013, Dowdle applied for the position of pipefitter at Defendant's Newport News' shipyard, through the Sub-Contractor.

27.     Dowdle previously worked as a pipefitter for Defendant through the Sub-Contractor on two separate occasions – from approximately June 2002 through December 2003 and again from approximately August 2005 to December 2006.

28.     On or about July 11, 2013, Dowdle received a conditional offer of employment for the pipefitter position.

29.     The Sub-Contractor provided Dowdle with dates of August 5 for a post-offer pre-employment medical examination and August 7, 2013 to begin work.

30.     Dowdle was administered a post-offer pre-employment medical examination during which Dowdle disclosed that he has a hereditary hearing impairment and wears hearing aids.

31.     Dowdle was given a hearing test as part of his pre-employment medical examination.  The pre-employment medical examination was conducted at a Defendant approved testing provider.

32.     The hearing testing was conducted pursuant to Defendant's testing standards. Defendant's Sub-contractor had no independent authority to control the way the hearing testing was completed and could not make any changes to how the tests were performed.  At all times, the pre-employment medical examination provider was an agent of Defendant.

33.     Prior to the hearing test, Dowdle informed the examiner that he wears hearing aids.  The examiner responded that Defendant requires that all hearing tests be performed without hearing aids.

34.     Dowdle removed his hearing aids and was administered the hearing test.  After the test, Dowdle requested that he be tested again with his hearing aids.  Dowdle's request was denied.

35.     The results from Dowdle's hearing test were forwarded to the Sub-Contractor on or about August 5, 2013.

36.     On or about August 5, 2013, the Sub-Contractor forwarded Dowdle's hearing test results to the Contractor.

37.     On or about August 6, 2013, the Contractor informed the Sub-Contractor that Dowdle was not an acceptable candidate to Defendant because of his hearing deficiency.   In response, Dowdle contacted Defendant and requested it re-consider its decision.  Dowdle also reiterated his need for a reasonable accommodation for the hearing test.

38.     On or about August 16, 2013, Sub-Contractor forwarded Dowdle an email Defendant had sent to the Contractor (which Contractor had forwarded to Sub-Contractor). Defendant's email requested that the Contractor advise Dowdle that Defendant was no longer interested in Dowdle as a candidate.

39.     At all relevant times, Dowdle was qualified to perform the essential functions of the pipefitter position he sought.

40.     At all relevant times, Dowdle was a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

41.     Dowdle was not hired for the pipefitter position he sought because of his physical impairment, hearing loss.

Failure to Accommodate

42.      The allegations contained above are incorporated as if set forth fully herein.

43.     At all relevant times, Defendant had an employment requirement that individuals submitting to a post-offer pre-employment hearing test could not wear hearing aids.

44.     Dowdle notified one or more of Defendant's managers directly that he needed an accommodation for the hearing test.  Defendant denied Dowdle's request.

45.     Defendant was aware, both directly and through its agent—Defendant's approved pre-employment testing facility—that Dowdle required a reasonable accommodation for the post-offer pre-employment hearing test. Specifically, Dowdle requested that he be allowed to take the hearing test while wearing his hearing aids.

46.     Defendant, either directly or through its agent—Defendant's approved pre-employment testing facility—refused to provide Dowdle with an accommodation for his disability during the post-offer pre-employment hearing test. Specifically, Defendant refused to permit Dowdle to wear his hearing aids during the hearing test.

47.     Defendant could have accommodated Dowdle's disability by allowing him to wear hearing aids during the hearing test without an undue hardship on Defendant.

48.     Defendant failed to accommodate Dowdle's disability, and failed to hire him because of his disability, in violation of the ADA.

49.     Defendant's actions were taken for discriminatory reasons, as described above.

50.     The effect of the practices complained of herein has been to deprive Dowdle of equal employment opportunities and otherwise adversely affect Dowdle's status as an employee because of his disability.

51.     The unlawful employment practices complained of above were intentional.

52.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Dowdle.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against individuals because of their disabilities, including discrimination in hiring, firing, failing to provide reasonable accommodation to qualified individuals with disabilities, and any other employment practice which discriminates on the basis of disability.

B.     Grant a permanent injunction enjoining Defendant from failing to provide a reasonable accommodation for hearing impaired individuals during the hiring phase (audiometry examinations); failing to hire individuals who have a hearing impairment without conducting an individualized assessment; and failing to provide reasonable accommodations to reduce or eliminate the risk of harm to individuals who need to wear hearing aids in Defendant's work environment.

C.     Grant a permanent injunction enjoining Defendant from requiring potential

recruits solicited through any Contractor or Sub-Contractor to be administered any type of pre-offer medical examination.

      D.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

      E.      Order Defendant to make Dowdle whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to rightful-place hiring and front pay.

      F.      Order Defendant to make Dowdle whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

      G.      Order Defendant to make Dowdle whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights, and other non-pecuniary losses, in amounts to be determined at trial.

      H.      Order Defendant to pay Dowdle punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

      I.      Grant such further relief as the Court deems necessary and proper in the public interest.

      J.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 13th day of September 2017.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507

LYNETTE A. BARNES
Regional Attorney

KARA GIBBON HADEN (Va. Bar No. 39682)
Supervisory Trial Attorney

/s   Amy E. Garber
AMY E. GARBER (Va. Bar No. 37336)
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Norfolk Local Office
200 Granby St., Suite 739
Norfolk, VA 23510
Tel: (757) 441-3134
Fax: (757) 441-6720
amy.garber@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**